In the United States District Court
for the District of Kansas

---

**In re: CCA Recordings 2255 Litigation**,
                      **Petitioners,**

v.                                                  Case No. 19-cv-2491-JAR-JPO

                                                    **(This Document Relates to Case No. 12-cr- 20066-KHV-29,** *United States v. Ataven Tatum*, **and Case No. 19-cv-02409-JAR-JPO,** *Ataven Tatum v. United States*)

**United States of America.**
                      **Respondent.**

---

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Ataven Tatum's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255 (Doc. 2169).[1] Petitioner alleges the government violated the Sixth Amendment by intentionally and unjustifiably becoming privy to his attorney-client communications. As a remedy, he asks the Court to vacate his judgment with prejudice to refiling or alternatively, to reduce his term of imprisonment by approximately 50% and vacate his term of supervised release and the $28,500,000 forfeiture award. The government has responded, opposing the motion and seeking dismissal on jurisdictional grounds.[2] For the

---

[1] Unless otherwise specified, citations prefaced with "Doc." refer to filings and docket entries in the underlying criminal case, No. 12-20066-KHV-29. Citations prefaced with "*CCA Rec. Lit.*, Doc." refer to filings and entries in this consolidated case, No. 19-2491-JAR-JPO. With the exception of *United States v. Carter*, Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019) ("*Black* Order"), citations to filings in No. 16-20032-JAR are prefaced with "*Black*, Doc."

[2] *Tatum v. United States*, No. 19-2409-JAR-JPO, Docs. 3, 7, 9; *CCA Rec. Lit.*, Docs. 730, 785.

1

reasons explained in detail below, Petitioner's challenge to his conviction and sentence is dismissed for lack of standing.

## I. Background

### A. Procedural History

Petitioner was charged in a Second Superseding Indictment with conspiracy to manufacture and possess with the intent to distribute 280 or more grams or more of cocaine base and to possess with intent to distribute and to distribute five kilograms of cocaine (Count 1); unlawful use of a communication facility in committing, causing, and facilitating the drug conspiracy count (Counts 23, 27, 91); maintaining a drug-involved residence (Count 92); manufacturing 280 or more grams or more of cocaine base (Count 90); distribution or possession with intent to distribute cocaine or cocaine base (Counts 84, 88, 89, 94, 95, 96, 99); and felon in possession of a firearm (Count 111).[3]  The indictment also included forfeiture allegations.[4] Counts 1 and 90 each carried a statutory mandatory minimum term of 10 years' imprisonment and a maximum term of life.[5]  The government gave notice of its intent to seek an enhanced mandatory minimum sentence of life imprisonment, pursuant to 21 U.S.C. § 851, based on Petitioner's prior felony narcotics convictions.[6]

On August 20, 2013, Petitioner pleaded guilty to the conspiracy charge in Count 1 pursuant to a binding plea agreement under Fed. R. Crim. P. 11(c)(1)(C).[7]  As part of the agreement, the parties proposed a 270-month custodial sentence followed by a ten-year term of

---

[3] Doc. 402.

[4] *Id.*

[5] *Id.* at 56.  *See also* 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

[6] Doc. 789.

[7] Doc. 967.

supervised release, in exchange for dismissal of all of the other charges.[8]  The government also agreed to withdraw a motion seeking a second enhancement under § 851.[9]

At sentencing on January 7, 2014, Judge Kathryn H. Vratil determined that the applicable Guidelines range was 360 months to life imprisonment.[10]  The court sentenced Petitioner to 270 months' imprisonment and ten years of supervised release, in accordance with the binding plea agreement.[11]  Petitioner did not file a direct appeal, nor has he filed a prior habeas motion under 28 U.S.C. § 2255.

Petitioner was represented by Dionne Scherff in the underlying criminal proceedings. The Court appointed the Federal Public Defender ("FPD") to represent Petitioner in his § 2255 proceedings on July 17, 2018.[12]  On July 17, 2019, the FPD filed a motion pursuant to § 2255 on Petitioner's behalf, setting forth a single ground for relief: the government violated the Sixth Amendment by intentionally and unjustifiably intruding into his attorney-client relationship.  The government responded to the motion and Petitioner replied.[13]  Petitioner is currently incarcerated at Oxford FCI, and his release date is November 4, 2031.[14]

### B. The *Black* Investigation and Order

The Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black* Order") that precipitates the § 2255 motions before the Court.[15]  That comprehensive opinion

---

[8] *Id.* ¶ 4.

[9] *Id.* ¶ 6.

[10] Doc. 1219.

[11] Doc. 1218.

[12] Standing Order 18-3.

[13] *Tatum*, No. 19-2409-JAR-JPO, Docs. 1, 3, 4.

[14] Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Apr. 6, 2021).

[15] Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019).  As discussed in that Order, the Sixth Amendment claims stem from recordings of conversations and meetings with counsel while they were detained at

3

was intended to provide a record for future consideration of the many anticipated motions filed pursuant to § 2255 and is incorporated by reference herein. The Court does not restate the underlying facts and conclusions of law in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

Petitioner seeks relief based on events that came to light in the *Black* case and investigation, which involved audio recordings of telephone conversations and soundless video recordings of meetings between attorneys and their clients who were detained at CCA. The government admits that it obtained videos from CCA in connection with the *Black* case, which focused on drug and contraband trafficking inside CCA. The government's possession of these recordings came to light in August 2016, when then-Special Assistant United States Attorney ("SAUSA") Erin Tomasic and AUSA Kim Flannigan accused defense attorney Jacquelyn Rokusek of "jeopardiz[ing] their investigation" in *Black* based on information they claimed to have gleaned from the video recordings.[16] The defense also discovered that the United States Attorney's Office for the District of Kansas ("USAO") had routinely obtained CCA recorded attorney-client phone calls, and that it did so without notice to the attorneys, clients, or courts.[17]

Once notified of the video and audio recordings, this Court ordered (1) all local federal detention facilities to cease recording attorney-client meetings and phone calls;[18] (2) the video and audio recordings in USAO custody to be impounded;[19] and (3) the government to preserve

---

Corrections Corporation of America ("CCA"). That facility has since been renamed CoreCivic. For convenience, the Court refers to it as CCA in this Order.

[16] *Id.* at 70–80.

[17] *Id.* at 29–30.

[18] *Black*, Doc. 253 at 3.

[19] *Id.* at 3, 12 ("The Court subsequently issued a clawback order directing the government to gather and surrender to the Court all audio recordings in its possession, in the possession of investigative agencies, and in the possession of other defendants who had received them in discovery.").

4

its computer hard drives.[20]  By October 11, 2016, the Court had appointed a Special Master to assist in what the Court termed "Phase I and Phase II" of the Court's investigations, that is, to determine the number of recordings possessed by the government and how to index and segregate them, and to identify privileged or confidential information within those recordings.[21]

The *Black* investigation revealed in relevant part that CCA recorded some of the outgoing phone calls between detainees and their counsel using equipment provided by Securus Technologies, Inc. ("Securus").[22]  The Court discussed in detail the flaws in CCA's privatization procedures and noted that as a result of these flaws, "calls between defense attorneys and clients at CCA were routinely recorded even when the attorney properly requested privatization."[23]  The Court further detailed how prosecutors at the Kansas City Office of the USAO not only knew that CCA recorded such calls, but that they could obtain the resulting recordings by making "a general request for detainee calls."[24]  The Court found that the government routinely made requests for detainee calls—without taking any precautionary measures to avoid protected communications—and routinely received recordings of attorney-client calls as a result.[25]  The USAO also used a grand jury subpoena to obtain recorded detainee calls associated with approximately 40 detainees as part of the *Black* investigation.[26]

---

[20] *Id.* at 40.  At the September 7, 2016 hearing in *Black*, "[t]he Court ordered the government to retain and preserve all of the hard drives as well as all of the hardware necessary to access the information on the hard drives." *Id.*

[21] *Black*, Doc. 146 (Appointment Order).

[22] *Black* Order at 5, 80, 85.

[23] *Id.* at 80–88.

[24] *Id.* at 106.

[25] *Id.* at 101–06.

[26] *Id.* at 90–91.

The government did not cooperate with the Special Master's investigation, however, and its failure to cooperate ultimately resulted in a lengthy delay in this Court's ability to rule on these issues. Finally, despite the delay associated with the government's failure to cooperate and its litigation efforts challenging the propriety of the Special Master's investigation, the Court conducted a full evidentiary hearing on all pending matters in *Black* in October and November 2018.

On August 13, 2019, the Court issued the *Black* Order, which discussed, among other things, the government's view that the audio recordings are not protected communications because detainees at CCA signed a general waiver and consent to the recording and monitoring of their calls.[27] The Order also addressed the governing standard for an intentional-intrusion Sixth Amendment claim in the Tenth Circuit.[28] The Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit decision in *Shillinger v. Haworth*,[29] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[30] Once those elements are established, prejudice is presumed.[31]

The Court further held that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-

---

[27] *Black* Order at 166–76.

[28] *Id.* at 145–62.

[29] 70 F.3d 1132 (10th Cir. 1995).

[30] *Black* Order at 162 (citing *Shillinger*, 70 F.3d at 1142).

[31] *Id.*

6

client communications.[32]  While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court applied principles relating to the privilege as a framework for this showing that the recordings between petitioners and counsel were protected communications under the Sixth Amendment.  With respect to the audio recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the telephone recording exists; (2) a given call contains protected attorney-client communication, i.e., communication that relates to legal advice or strategy sought by the client; and (3) an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[33]

### C. Proceedings in Consolidated Master Case

The *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery.[34]  It was this Court's intent that by reassigning the habeas actions to the undersigned and consolidating the cases for discovery, the process for seeing over 100 cases to completion would be streamlined for all parties.

The Court also assumes the reader is familiar with the proceedings in the consolidated master case that precipitates the matter before the Court, and does not restate the underlying facts in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.  As detailed in the Court's October 15, 2020 Orders, the parties' initial efforts at cooperation culminated in the government's notice that it refuses to comply with discovery

---

[32] *Id.* at 163.

[33] *Id.* at 166.

[34] *CCA Rec. Lit.*, Doc. 1.

7

orders and demands that the Court rule immediately on both the procedural and merits defenses raised in its responses to the § 2255 motions.[35] Highly summarized, the Court: (1) reaffirmed its previous ruling on the government's implied waiver argument and, in light of the government's blanket objections to petitioners' privilege logs, established a procedure for *in camera* review of the recordings; (2) ordered petitioners asserting audio recording claims to supplement the record with affidavits on the issue of waiver; (3) ordered the parties to supplement their responses and replies to address jurisdictional defenses and the collateral-attack waiver by plea agreement issue; and (4) found the government's refusal to comply with discovery orders issued by the Court sanctionable under Fed. R. Civ. P. 37(b)(2) and notified the government of its intent to take as conclusively established certain facts petitioners might have proved regarding the "privy to" element of their Sixth Amendment claims for any petitioner who establishes that he or she is entitled to an evidentiary hearing.[36]

On January 18, 2021, the Court issued an order: (1) reaffirming and expanding its holding regarding the applicable Sixth Amendment standard; (2) addressing the collateral-waiver by plea issue; and (3) addressing jurisdictional defenses raised by the government, including certification requirements under Rule 2(b) of the Rules Governing Section 2255 Proceedings.[37] Petitioner timely filed his Signed Rule 2(b)(5) Verification on February 25, 2021.[38]

### D. Recordings in this Case

Upon arriving at CCA, Petitioner signed several documents acknowledging that telephone calls that he made from CCA may be monitored and recorded and advising him that

---

[35] *CCA Rec. Lit.*, Docs. 587, 588.

[36] *Id.*

[37] *CCA Rec. Lit.*, Doc. 730 (clarified and reconsidered in part on other grounds, *id.*, Doc. 784).

[38] *Id.*, Doc. 775.

calls with his attorney were subject to being monitored unless he followed the privatization procedure in place to make an unmonitored call.[39]  While Petitioner was detained at CCA, he called his attorney to discuss his case.

Petitioner was prosecuted by AUSA Terra Morehead and AUSA David Zabel, who deny that they were aware of or listened to the attorney-client recordings.[40]

Per the parties' agreement, as part of the *Black* investigation, the government began surrendering recordings and derivative evidence of audio calls from CCA that were in its possession.[41]  The FPD reviewed the recordings of Petitioner speaking with Scherff, or Scherff's legal assistant Judi Tranckino, from CCA on December 30, 2013, January 6, 2014, and January 31, 2014.  Pursuant to the Court's Order, Petitioner provided a privilege log detailing the claimed protected communication, verifying that during two phone conversations, Petitioner discussed matters "relat[ing] to legal advice or strategy" with Scherff.[42]  Petitioner also provided a sworn declaration from Scherff stating that the telephone conversations related to legal advice or strategy, that she did not know or believe that any of her conversations with clients were subject to monitoring or recording, inasmuch as these were private attorney-client phone calls with no one else on the line, that she did not consent to any such monitoring or recording, and that she believed there was no need to privatize her phone number because the attorney-client calls were treated as strictly confidential and protected by the attorney-client relationship.[43]  Scherff stated

---

[39] *Tatum*, 19-2409-JAR-JPO, Doc. 5-1.

[40] *Id.*, Docs. 3-1, 3-2.

[41] *Black*, Doc. 705.

[42] *CCA Rec. Lit.*, Doc. 682-1.  Petitioner withdrew any claim with respect to his December 4, 2012 call to attorney Jason Hoffman.

[43] *Tatum*, No. 19-2409-JAR-JPO, Doc. 6-1.

that she could not recall whether she informed Petitioner that the calls were subject to monitoring or recording.[44]

Pursuant to the Court's order, Petitioner supplemented the record with a sworn statement addressing the issue of waiver with respect to his audio recording claims.[45]  He avers that he did not know that by signing the CCA documents, he was consenting to CCA giving the recordings to the USAO and its agents.[46]  Petitioner further avers that at the time he placed the calls listed on the privilege log, he believed that the phone system would prevent attorney-client calls from being recorded or would delete inadvertently recorded calls, that the written warning signs placed on or near the telephone applied to attorney-client calls, that his attorney-client calls were subject to monitoring or recording, or that the USAO or its agents could obtain recordings of his attorney-client calls from CCA.

After the government objected to Petitioner's privilege log, the Court reviewed the audio recordings *in camera*.  At the beginning of each call, a recorded preamble states the balance of the prepaid call account and the following language: "This is a free call from an inmate at CCA-Leavenworth Detention Center.  This call is subject to recording and monitoring."  There is no discussion of this preamble between Petitioner and Scherff in the calls listed in the privilege log.  In one call, however, Scherff's paralegal warns Petitioner not to say too much because the calls are being recorded.  As set out in the privilege log, the content of the calls includes discussions relating to legal advice or strategy.  In light of the analysis below, however, the details of the attorney-client conversations are not pertinent and will not be discussed in this order.

---

[44] *Id.*

[45] *Id.* Doc. 5.

[46] *Id.*, Doc. 5-1.

**II.    Discussion**

The government argues that Petitioner lacks standing to challenge his conviction and sentence because the audio recordings were accessed after Petitioner entered his plea and was sentenced.[47]

**A.    Justiciability Standards**

Article III of the Constitution gives federal courts the power to exercise jurisdiction only over "Cases" and "Controversies."  Federal courts must have a statutory or constitutional basis to exercise jurisdiction.[48]  And, without jurisdiction, a court must dismiss the case.[49]  Courts thus must determine, either *sua sponte* or upon a challenge by a party "at any stage in the litigation," whether subject matter jurisdiction exists.[50]  Article III's case-or-controversy requirement applies at all stages of litigation.[51]  There are three basic elements of standing: (1) an injury, (2) a causal connection between that injury and conduct complained of in the motion, and (3) the likelihood that court action could redress that injury.[52]  To demonstrate causation, a party must show that their alleged injury is "fairly traceable" to the complained of conduct.[53]  "Article III . . . require[s] proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury

---

[47] *Id.*, Docs. 7, 9; *CCA Rec. Lit.*, Doc. 785 at 6–9.

[48] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

[49] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

[50] *Arbaugh,* 546 U.S. at 506 (explaining that challenges to subject matter jurisdiction "may be raised . . . at any stage in the litigation, even after trial and the entry of judgment.").

[51] *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).

[52] *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 2021 WL 850106, at *2 (Mar. 8, 2021).

[53] *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008) (*citing Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)).

in fact."[54]  "When '[s]peculative inferences are necessary to connect [a plaintiff's] injury to the challenged action,' this burden has not been met."[55]

### B.  Timing of the Alleged Violation

The three recorded phone conversations between Petitioner and Scherff's office took place on December 30, 2013, January 6, 2014, and January 31, 2014.  However, the FPD recently confirmed that it has revisited the relevant Securus records and, based on the available evidence, Petitioner cannot prove that anyone actually accessed the relevant audio recordings until after he was sentenced and thus he cannot rely on the adverse inference to prove the prosecution team became privy to the audio recordings before that point.  Specifically, it is undisputed that the Securus call access logs Petitioner provided in discovery state that any pre-sentencing calls were "accessed" on January 13, 2014, after he was sentenced on January 7, 2014.[56]  Thus, any alleged Sixth Amendment violation could not have occurred until after both Petitioner's plea and sentencing were already complete, leaving no redressable injury.[57]

As this Court discussed in its January 18, 2021 Order, when the alleged intrusion occurs after the petitioner was sentenced, "the intrusion cannot be tied to any claimed unfairness or impropriety in the conviction, plea, or sentencing process.  Without such a nexus, these petitioners cannot proceed with claims challenging either their conviction or sentences."[58]

---

[54] *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005).

[55] *Id.* at 1157 (*quoting Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976)).

[56] *CCA Rec. Lit.,* Doc. 785 at 6–9, Attach. B; *Tatum*, No. 19-2409-JAR-JPO, Doc. 9-2.

[57] *CCA Rec. Lit.*, Doc. 793 at 8–9.  The FPD continues to maintain that the earliest date an audio recording could *potentially* be accessed is the date the recording was created but, after reviewing the evidence, agrees that Tatum cannot prove that his recordings were *actually* accessed on the Securus Call Platform before he was sentenced.  *Id.* at 8, n.16.

[58] *See id.*, Doc. 730 at 53.

Falling squarely into this category, the Court concludes that Petitioner lacks standing to challenge his conviction and sentence and his motion must be dismissed for lack of jurisdiction.

### III. Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[59]  If the district court denies a habeas petition on procedural grounds without reaching the merits of petitioner's underlying constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling' and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[60]  For the reasons explained above, Petitioner has not met either showing and the Court therefore denies a COA.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Ataven Tatum's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255 (Doc. 2169) is **dismissed**.  Petitioner is also denied a certificate of appealability.

**IT IS SO ORDERED.**

Dated: April 6, 2021

 S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[59] 28 U.S.C. § 2253(c)(2).

[60] *United States v. Park*, 727 F. App'x 526, 528 (10th Cir. 2018) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).